**FISHER SCIENTIFIC COMPANY,**
Plaintiff,

v.

**CITY OF NEW YORK; New York City Council; Andrew Stein, as President Thereof; Charles Millard, C. Virginia Fields, Lawrence A. Warden, Jose Rivera, Rafael Castaneira–Colon, Walter L. McCaffrey, Karen Koslowitz, Annette Robinson, Susan Alter, as Council Members Constituting the Committee on Civil Service and Labor of the New York City Council, Defendants.**

No. 92 Civ. 8774 (SS).

United States District Court,
S.D. New York.

Jan. 29, 1993.

Pitney, Hardin, Kipp & Szuch, Morristown, NJ, for plaintiff; by Sean T. Quinn.

City of New York, Law Dept., New York City, for defendants; by Lawrence S. Kahn.

Shea & Gould, New York City, for Intervenor Intern. Broth. of Teamsters, Steel, Metal, Alloys and Hardware Fabricators and Warehousemen, Local 810, AFL–CIO; by Eve I. Klein, Joshua A. Adler, Mark S. Weprin.

## MEMORANDUM OPINION AND ORDER

SOTOMAYOR, District Judge.

Plaintiff Fisher Scientific Company ("Fisher") seeks to enjoin defendants, the City of New York, the New York City Council ("City Council"), the City Council's Committee on Civil Service and Labor (the "Committee") and the members of the City Council (collectively, the "City Defendants"), from holding a hearing on or proposing, endorsing, or ratifying Resolution 910. Resolution 910 expresses a negative opinion about Fisher's labor negotiations with the International Brotherhood of Teamsters, Steel, Metal, Alloys and Hardware Fabricators and Warehousemen, Lo-

cal 810, AFL–CIO (the "Union"), notes that Fisher's use of replacement workers calls into question the quality of its products, and recommends that City agencies buy medical and laboratory supplies from companies other than Fisher until Fisher rehires its Union workers. The parties agreed to combine the trial on the merits on Fisher's application for a permanent injunction with the preliminary injunction hearing. For the reasons stated below, Fisher's application for injunctive relief is DENIED and the Complaint is dismissed. In addition, Fisher's request for an injunction pending appeal is DENIED.

### I. Background

#### A. *The Events Giving Rise to This Action*

Fisher manufactures and distributes medical, laboratory, and scientific equipment. Fisher's Eastern Distribution Center ("EDC"), in Springfield, New Jersey, serves as a regional warehouse and distribution point for medical and laboratory equipment, such as microscopes and test tubes.

Since 1967, Fisher and the Union have been parties to successive collective bargaining agreements covering EDC employees. The most recent collective bargaining agreement expired by its own terms on October 21, 1991 and certain Union employees at the EDC then began to strike. Fisher operated the EDC with a reduced crew of supervisors and temporary replacements until February 1992, when it permanently replaced the economic strikers at the EDC. Since the strike began, negotiations between the parties have been unsuccessful.

By letter dated November 12, 1992, Yvonne Gonzalez, Assistant Counsel to the Speaker of the City Council, notified Fisher that the City Council's Committee would be holding a hearing on Resolution 910. Resolution 910 observes that Fisher "offered their warehouse employees [at the EDC] the ultimatum of accepting a 450% increase in the employee contribution to the health insurance premium, or going out on strike," and that Fisher rejected a cost-saving proposal by the Union and instead

"permanently replaced those 77 long-service, experienced workers." Resolution 910 goes on to note that "[t]he quality of the products now offered by Fisher to medical institutions of the City of New York is compromised by the company's use of inexperienced replacement workers." For those reasons, the City Council would resolve to recommend "that every city agency that buys medical and laboratory supplies from Fisher Scientific seek alternative sources for products," and that the City Council notify Fisher that its action "violates acceptable labor relation standards, and that the City of New York will seek to give preference to alternative suppliers until the [EDC] warehouse employees are rehired and reinsured."

A Committee hearing was originally scheduled for December 9, 1992. Fisher advised Ms. Gonzales that it believed that the proposed hearing on Resolution 910 constituted an unlawful interference with the collective bargaining process. Two days later, Fisher brought this action pursuant to 42 U.S.C. § 1983, alleging that the Committee's and Council's actions on Resolution 910 would violate its federal right to collective bargaining. Fisher sought a Temporary Restraining Order ("TRO"), and preliminary and permanent relief from any actions by the City Defendants on the proposed resolution.

At this Court's hearing on the application for a TRO, City Defendants announced that the Committee hearing on Resolution 910 was postponed until January, 1993. In addition, the Union entered an appearance, seeking to intervene in this action, as of right or by permission, or, alternatively, to participate in the proceedings as *amicus curiae*.[1] The Court did not grant the temporary injunctive relief that Fisher sought, finding that the adjournment of the hearing removed the immediate threat of irreparable injury, and that a balance of the equities favored affording the City Defendants the opportunity to respond fully to

Fisher's application. The City Defendants, however, were ordered to notify the Court at least seven days prior to "any hearing on Resolution 910 or any other resolution or action similar thereto which relates to the labor dispute or the collective bargaining negotiations between [Fisher] and [the Union]."

A hearing was held in January on Fisher's application for a preliminary injunction. The Court has granted the parties' request that, pursuant to Fed.R.Civ.P. 65(a), the preliminary injunction hearing be combined with the trial on the merits on Fisher's request for permanent injunctive relief. Timely notice has now been given that a Committee hearing on Resolution 910 is scheduled for February 1, 1993.

**B.** *The City Council and Its Resolutions*

A short review of the powers and procedures of the City Council, as well as the path by which a resolution is enacted, and its subsequent effect, illuminates the issues that this case presents.

The City Council and its committees possess and exercise all of the legislative power of the City of New York. The City Council's powers include the exclusive authority to adopt local laws and to adopt and modify the budget for New York City. In addition, the City Council has the authority to provide an opportunity for discussion of matters of public concern and to provide a forum for public comment on such issues through a public hearing process. Finally, the City Council, or any of its standing or special committees, may investigate any matters within its jurisdiction relating to the "property, affairs or government of the City." Charter of New York City § 29. The City Council is also charged with the regular review of the activities of New York City agencies. *Id.*

To implement these responsibilities and mandates, the City Council has previously

---

1. The Union has satisfied the requirements of Fed.R.Civ.P. 24(a)(2) and its unopposed motion to intervene as of right is granted. *See, e.g., Farmland Dairies v. Comm. of New York State Dept. of Agriculture*, 847 F.2d 1038, 1043 (2d Cir.1988). The Court need not consider the Union's alternative motions to intervene permissively, pursuant to Fed.R.Civ.P. 24(b)(2), or to appear as *amicus curiae*.

held two different types of hearings. On the one hand, following the notorious fire at a Bronx social club that resulted in the death of over eighty people, a City Council committee conducted a vigorous full-scale investigation and public inquiry, that resulted in strong criticism of New York City's regulation of clubs. In contrast, other hearings have been convened to provide fora for discussion and public comment upon issues of public concern. According to the City Defendants, the hearing on Resolution 910 falls into this latter category of less formal inquiries.

Pursuant to City Council rules, a public hearing must be held before a committee may vote on a resolution.[2] If a Committee then chooses to vote on the resolution, and a majority of the committee's members approves the resolution, it is then presented to the full City Council for consideration, where it may or may not be approved. A proposed resolution may be amended at numerous stages in the process. In contrast to a bill for a local law, no mayoral approval is required for a resolution: once the City Council passes the resolution, no further activity is required. In addition, unlike a local law, which has binding force and effect, a resolution such as that concerning Fisher is merely hortatory, with no binding effect.

## II. Discussion

The purpose of a preliminary injunction is "to protect plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits." Wright & Miller, 11 *Federal Practice and Procedure* § 2947; *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir.1985). At the hearing on Fisher's application for a preliminary injunction, the parties agreed that no further evidence would be presented at any ultimate trial on the

merits. The Court granted their request that the trial on the merits be consolidated with the preliminary injunction hearing, as prescribed by Fed.R.Civ.P. 65(a)(2). *See, e.g., McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.*, 938 F.2d 1544, 1545 (2d Cir. 1991). Thus, the trial on the merits has already been held, and Fisher's application for a preliminary injunction is now treated as a request for the permanent injunctive relief that Fisher sought in its Complaint.

Fisher asks this Court to enjoin City Defendants under 42 U.S.C. § 1983 from proposing, sponsoring, holding a hearing on, or ratifying Resolution 910. Fisher contends that such actions on City Defendants' part would deprive Fisher of its federal right to engage in collective bargaining free from state or municipal intrusion, as the Supreme Court has explained that right in *Lodge 76, Int'l Association of Machinists and Aerospace Workers v. Wisconsin Employment Relations Commission*, 427 U.S. 132, 140, 96 S.Ct. 2548, 2553, 49 L.Ed.2d 396 (1976) ("*Machinists*"), and its progeny, including *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 614, 106 S.Ct. 1395, 1398, 89 L.Ed.2d 616 (1986) ("*Golden State I*").

The City Defendants and the Union have offered a wide range of reasons why the Court should not issue the requested equitable relief, including legislative immunity, First Amendment rights, and lack of ripeness. Moreover, they have drawn compelling distinctions between this case and those labor law preemption cases on which Fisher relies, most notably *New York News, Inc. v. State of New York*, 745 F.Supp. 165 (S.D.N.Y.1990). However, the Court need not address any of these issues at this time for the simple reason that Fisher has failed to show that it would suffer irreparable injury if the Court denied its application for injunctive relief.[3]

---

**2.** There is a narrow exception for those resolutions that are introduced at a meeting of the full Council for immediate consideration. Resolution 910 does not fall within this exception.

**3.** This action raises serious questions about the power of a district court to enjoin legislative activity. If the courts could, and did, routinely entertain suits concerning pending legislation,

they would be swamped with actions by citizens fearful that the destruction of their rights was imminent. Many of these putative suits regarding inchoate legislation are kept at bay by the requirement of ripeness, which also ensures that the court hearing such suits has the benefit of a precise factual framework. In addition, the courts' foray into ongoing legislative activity

It is well established that a party seeking a permanent injunction must demonstrate "the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *N.Y. State National Organization for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). Fisher has not carried its burden of showing that it will suffer irreparable harm if the Defendants are not permanently enjoined from proposing, sponsoring, holding a hearing on, or ratifying Resolution 910. Consequently, its application for permanent injunctive relief must be denied.

Fisher contends that the consideration of Resolution 910 by the City Defendants constitutes impermissible intrusion by a municipal government into the collective bargaining process. At oral argument, Fisher conceded that a statement by the City Council members that they opposed Fisher's negotiation tactics and stance would not be unlawful. It also agreed that the City Defendants could conduct an investigation into a complaint about the safety of its products. Fisher's position, however, is that any type of hearing by the City Defendants to express an opinion on the collective bargaining process would be impermissibly coercive, and irreparably harmful, by raising the possibility of economic sanctions.

Nevertheless, Fisher has failed to introduce competent evidence sufficient to convince the Court that its faces irreparable harm. It has not shown that the City Defendants are forcing it to lose business or to capitulate to the Union, or that they will force it do so. For example, Fisher was unable to identify even one customer that had expressed concern over the proposed resolution.

Fisher also argues that the legislative process must be stopped now because the very passage of Resolution 910 would perfect a solicitation of an illegal boycott that would irreparably harm Fisher. However, the legislative proceedings that pertain to Resolution 910 are still at an embryonic stage. Resolution 910 may undergo substantial modification before passage or it may not be passed at all [4]. Even if did pass, Resolution 910 would merely render advice to agencies—advice which, the City Defendants tell us, the agencies would be free to ignore. Fisher has failed to introduce evidence as to how irreparable injury would follow the passage of a hortatory resolution. For example, Fisher has offered no evidence that any city agencies would follow such advice, and could not identify any city agencies that had stopped doing business with it as a result of the proposal of Resolution 910. For that matter, Fisher introduced no evidence on the

---

should also be restrained by a healthy respect for separation of powers. Implicit in that doctrine, and intertwined with the requirement of ripeness, is the notion that a court should give a legislative body the opportunity to avoid running afoul of the Constitution. *See Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 227–30, 29 S.Ct. 67, 70–71, 53 L.Ed. 150 (1908). As the City Defendants have frequently reminded the Court, neither the Committee nor the City Council has yet passed Resolution 910, and they may yet conclude on their own that the Resolution in its current form is unlawful, or unwise.

There are exceptions to this general hands-off rule. For example, although it is not the case here, a court may order a legislative body to adopt a particular act if the legislators had signed a consent decree saying that they would do so. *See, e.g., Spallone v. United States*, 487 U.S. 1251, 109 S.Ct. 14, 101 L.Ed.2d 964 (1988). However, none of the cases that Fisher cites in support of its request that this Court stop the legislative process in its tracks involved injunctive relief directed at a legislature's mere consid-

eration of a bill or resolution. *See, e.g., Golden State I* (city unlawfully conditioned a franchise renewal on the settlement of a labor dispute); *Machinists* (overturning state commission's order that Union cease and desist from certain activities); *New York News* (State Department of Labor enjoined from convening board of inquiry). However deeply troubled this Court may be about the reach of a district court's power into the legislative process itself, there is no need to address that question today because of Fisher's failure in this case to demonstrate that it will suffer irreparable harm absent injunctive relief.

**4.** An action for damages or for an injunction against implementation of Resolution 910 would therefore be patently unripe at this juncture. *See, e.g., New Orleans Public Service, Inc., v. Council of City of New Orleans*, 491 U.S. 350, 371–73, 109 S.Ct. 2506, 2520, 105 L.Ed.2d 298 (1989) (ripeness holding in *Prentis* directed against "interference with an ongoing legislative process").

portion of business that it does with city agencies. Fisher's counsel simply noted that after the Boston City Council passed a resolution nearly identical to Resolution 910, a Boston newspaper article reported that a hospital administrator there agreed with the boycott.

There is also no support for Fisher's contention that a legislative hearing would be coercive because it would present Fisher with the Hobson's choice of not defending itself, or of being forced to protect its interests at a hearing by disclosing its collective bargaining stance. Fisher, however, has failed to demonstrate that its absence from the hearing would necessarily result in the passage of Resolution 910, or that even if Resolution 910 did pass, irreparable harm would follow. Further, there is no merit to Fisher's suggestion that if it attended a hearing, it would be forced to reveal confidential bargaining goals and strategies that would compromise its collective bargaining position in abrogation of its federal rights. Even if the hearing did turn to the question of Fisher's negotiation strategy, which may or may not happen, Fisher would not be forced to reveal anything. The City Defendants have expressly disclaimed their subpoena powers for the hearing. Unlike the enjoined proceedings in *New York News*, in which the parties would have been "[c]ompelled to produce documents and testify under oath setting forth their bargaining positions," 745 F.Supp. at 169, the contemplated hearing in this case would not be coercive. It will neither "disrupt the negotiations" nor "impact upon the positions of the parties." 745 F.Supp. at 170. Thus, Fisher has made no showing that its non-coerced attendance at a hearing held in conjunction with a legislature's consideration of a non-binding resolution would constitute such impermissible governmental intrusion as to result in irreparable harm.

In sum, Fisher has not convinced the Court that the consideration of Resolution 910 by the City Defendants is coercive in any way. Fisher has simply failed to demonstrate that it will suffer irreparable harm, and absent such proof, injunctive relief cannot issue. *N.Y. State National Organization for Women v. Terry*, 886 F.2d at 1362. This is not to say that Fisher may never have a meritorious claim against the City Defendants. Indeed, some of Fisher's suggestions regarding Resolution 910 are quite troubling. For example, Resolution 910 states at the outset that "[t]he quality of the products now offered by Fisher to medical institutions of the City of New York is compromised by the company's use of inexperienced replacement workers." Yet, counsel for the City Defendants admitted during oral argument that the Committee had received no complaints from Fisher's customers questioning the quality of its products. Fisher's observation that Resolution 910 may erroneously and unjustifiably raise the specter of a health and safety threat in order to act as an economic bludgeon is indeed alarming. The Court, however, cannot address this concern in view of the scanty record assembled so far and in light of the inchoate character of the resolution.

III. Conclusion

For the reasons stated above, the Union's motion to intervene as of right is GRANTED. Fisher's motion for a preliminary injunction, as well as its current request for permanent injunctive relief, is DENIED and the Complaint is dismissed. Finally, because the Court concludes that there is little likelihood of irreparable harm to Fisher if the City Defendants continue to consider Resolution 910 in accordance with the normal legislative procedures, Fisher's request for a Fed.R.Civ.P. 62(c) injunction pending appeal is DENIED.

SO ORDERED.