**L & F PRODUCTS, A DIVISION OF STERLING WINTHROP INC.,**
Plaintiff–Appellant,

v.

**PROCTER & GAMBLE COMPANY,**
Defendant–Appellee.

No. 279, Docket 94–7296.

United States Court of Appeals,
Second Circuit.

Argued Sept. 22, 1994.

Decided Jan. 25, 1995.

Joseph F. Tringali, Simpson, Thacher & Bartlett, New York City (Charles E. Koob, Nicholas Even, Christopher C. Edel, Simpson, Thacher & Bartlett, New York City, of counsel), for plaintiff-appellant.

Harold P. Weinberger, Kramer, Levin, Naftalis, Nessen, Kamen & Frankel, New York City (Mark J. Headley, Kramer, Levin, Naftalis, Nessen, Kamen & Frankel, New York City, Wm. Stanley Morton, Associate Gen. Counsel, The Procter & Gamble Co., Cincinnati, OH, of counsel), for defendant-appellee.

Before: PRATT, ALTIMARI, and LEVAL, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiff-appellant L & F Products appeals from a judgment entered after a bench trial in the United States District Court for the Southern District of New York (Tenney, *J.*) in favor of defendant-appellee The Procter & Gamble Company. The district court dismissed the complaint, which sought injunctive relief and damages pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*

On appeal, L & F Products ("L & F") claims that Judge Tenney erred in concluding that commercials aired by its competitor in the bathroom cleaning products' market, The Procter & Gamble Company ("P & G"), conveyed no literally or facially false messages about L & F's products. L & F also insists that the court erred in declining to conclude that the product demonstrations upon which the commercials were based were possible only because they employed undisclosed and deceptive devices. Because we disagree, we affirm the judgment of the district court.

## BACKGROUND

L & F manufactures and markets LYSOL cleaning products, including LYSOL Basin Tub & Tile Cleaner, a bathroom cleanser, and LYSOL Deodorizing Cleaner, for use in bathrooms as well as other rooms. P & G manufactures and sells several Spic and Span household cleaning products, including Spic and Span Basin–Tub–Tile Cleaner, Spic and Span Bathroom Cleaner, and Ultra Spic and Span, a general cleanser.

In July 1993, P & G began a television advertising campaign in which its products were compared to those of an unnamed competitor. There is no dispute that the unnamed product in each commercial represented LYSOL Deodorizing Cleaner, an all-purpose product often employed for bathroom cleaning. Three commercials are challenged. Two aired on national, local and cable stations; the third, for reasons unrelated to this litigation, has not been released generally. Because the requested relief would also have enjoined the transmission of the third commercial it, too, is at issue in this appeal.

The disputed commercials take similar tacks in portraying three Spic and Span products. Cheerful music is heard. Although there is no dialogue, each closes with a voice-over. In each of the three ads, a Spic and Span product and LYSOL Deodorizing Cleaner are used by two custodians on identical soiled shower stalls, tubs, or tile floors set in a large, white room. The surfaces are visibly dirty when the custodians begin their tasks. Each custodian is shown making one swipe across the dirty surface; the screen then "dissolves." The custodians leave, looking pleased with their work.

Two new characters enter. Each contrives to casually pass a white cloth over the just-cleaned stalls, tubs or floors. The surface cleaned with LYSOL is ultimately revealed to have left a residue that is seen to sully the cloth. The white cloths passed over the tub, shower and floor cleaned with Spic and Span are not similarly dirtied. By way of illustration, in the shower commercial, two women wearing white socks step into the newly-cleaned bathtubs. They each hang a shower curtain before stepping out of the tub. The woman who stepped into the tub cleaned with the LYSOL product reveals a dirty sock. The other woman's sock is still white.

Because P & G videotaped the filming of the commercials, there can be no controversy

about how they were produced. The shower and tub commercials employed templates made of the same materials that formed the tubs and showers themselves. P & G explained that use of the templates was required for technical reasons. Like other manufacturers, P & G has developed its own soap scum for use in testing its products. Its formula includes carbon black, a dark pigment used as a laboratory marker. In order to mimic the tenacity of household soap scum, the laboratory-developed product is baked onto a test surface at high temperatures. Because of the impossibility of baking an entire shower stall or tub, templates are used.

The soiled templates were wiped with the competing products off-screen. There is no dispute that the templates were wiped an equal number of times with a comparable degree of force. They were later inserted into the shower and steambath sets and, on-screen, white cloths were drawn against them. However, the initial swipe across the shower and tub tiles by the custodians was performed on tiles dirtied with ordinary soil, rather than the laboratory-developed scum. The as-yet-unbroadcast floor commercial, by contrast, did not require the use of templates. Unlike its soap scum, P & G's laboratory-developed floor grime does not require baking. The laboratory-developed floor soil was applied to actual floor tiles for both on- and off-screen use.

After a four-day bench trial, the district court issued an opinion in which it found that the advertisements were neither false nor misleading. Accordingly, it dismissed the complaint. 845 F.Supp. 984. We summarize those of Judge Tenney's findings which are relevant to the issues raised on this appeal.

Relying on evidence adduced at trial, including a consumer survey commissioned by L & F, the district court determined that the addition of carbon black to P & G's laboratory-developed soap scum was not misleading. The court found that L & F had failed to demonstrate that consumers believed that they were viewing actual cleaning competitions or that consumers were misled into the belief that the cleaning was effected in only one wipe.

The court also found that the commercials did not convey to a statistically significant number of consumers the message that LYSOL was an ineffective cleaner. Finally, despite an admission by a P & G witness that P & G intended to convey this disputed message, the court determined that L & F had failed to show that the commercials conveyed the message that LYSOL merely appeared to clean. Instead it found only that Spic and Span cleaned more efficiently.

L & F's primary contention on appeal is that the district court erred when it determined that the only message conveyed by the commercials was Spic and Span's relative superiority. L & F urges that other false messages were conveyed through deceptive methods. In particular, L & F maintains that the ads imparted the false message that LYSOL merely appears to clean a surface.

## DISCUSSION

 Section 43(a) of the Lanham Act forbids the use of a "false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same...." 15 U.S.C. § 1125(a). A successful Lanham Act plaintiff must make one of two showings. The plaintiff must demonstrate either that the challenged advertisement is literally false, or, although literally true, that it is still likely to mislead or confuse consumers. *See Johnson & Johnson * Merck v. Smithkline Beecham Corp.,* 960 F.2d 294, 297 (2d Cir.1992); *Johnson & Johnson v. GAC Int'l, Inc.,* 862 F.2d 975, 977 (2d Cir.1988). Where the plaintiff's theory is that the challenged commercial is impliedly false, extrinsic evidence must confirm that the commercial is likely to mislead or confuse. *See Smithkline Beecham,* 960 F.2d at 297.

### A. False Messages

District Judge Tenney found that the only literal message conveyed to consumers was that Spic and Span was superior to LYSOL. L & F suggests that we are as well-positioned as was the district court to review the commercials and make that determination.

In a carefully couched invitation, it asks that we apply a less deferential standard of review to the district court's determination of facial falsity. The standard of review, however, has been resolved.

■ The district court's determination with respect to facial falsity is a finding of fact which we review for clear error. *See Ortho Pharmaceutical Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 693 (2d Cir.1994); *GAC Int'l*, 862 F.2d at 979. This Court will not disturb factual determinations unless we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *see also McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.*, 938 F.2d 1544, 1550 (2d Cir.1991). We are left with no such conviction.

■ The district court carefully analyzed the findings of L & F's consumer survey. The survey polled pre-screened shoppers in certain malls nationwide. The shoppers viewed the commercials and were asked several questions that allowed them to express, in their own words, the meaning of the commercials. The study purported to show that consumers perceived derogatory messages about the unnamed competitive cleaner.

The court, however, found both the study and its tabulation to be riddled with flaws. The court meticulously reviewed the formulation of questions put to consumers, read the responses, and analyzed the survey's tabulation. Rejecting certain of the report's conclusions, and discounting others, the district court concluded that "the primary message of the commercial[s] was comparative." L & F does not contest the district court's assessment of its study on this appeal.

Furthermore, the court reviewed the videotapes of the commercials. It is clear from its opinion that the court itself perceived no hidden messages. Finally, the court also considered the testimony and cross-examination of the parties' respective expert witnesses on this point. We find no error in Judge Tenney's conclusion that product superiority was the only message conveyed by the commercials.

We thus reject what appears to be L & F's chief grievance: that the "rug-pull" effect conveyed the false message that LYSOL merely appears to clean. By "rug-pull" the parties refer to the surprise at the end of each commercial, when it is revealed that LYSOL has not cleaned as effectively as Spic and Span. L & F's argument is, in essence, that, although LYSOL might be less effective than Spic and Span, it nonetheless would not leave a surface looking clean until it was in fact clean. In other words, a real consumer would, unlike the television viewers, never be unpleasantly surprised.

The difficulty with L & F's argument is that L & F did not establish at trial that the message was false. Despite L & F's complaints about the techniques employed to create the commercials, the fact remains that the two products were handled in identical fashions. An equal number of swipes was applied with comparable force to surfaces coated with a laboratory-developed soap scum that fairly represented the tenacity of the soap deposits found in some homes. Finding no fault with the commercials' production, we cannot dispute the ultimate message: that, at the point when Spic and Span has cleaned a surface, a surface cleaned with LYSOL will not yet be as clean. Because the proof at trial did not establish the falsity of this message, the district court did not clearly err.

In reaching our conclusion, we have rejected several of L & F's arguments with respect to the manner in which the district court analyzed the alleged flaws in the commercials. First, L & F claims that the court displayed an impermissible "skepticism" toward L & F's assertion that the visual images projected by the commercials could convey false messages. A reading of Judge Tenney's opinion makes clear that he simply did not find the ads misleading. Surely he appreciated that largely visual images are capable of conveying a false message.

■ Second, L & F claims that the district court erred as a matter of law in relying on the survey to determine that only one message was conveyed. This claim is likewise unavailing. It is undisputed that the

district court must rely on extrinsic evidence to support a finding of an impliedly false message. *See Smithkline Beecham,* 960 F.2d at 297. Why such proof could not also support a finding that no facially false messages were being conveyed is not obvious. L & F has provided neither authority nor a persuasive argument that use of the consumer survey to sustain a finding that no literally false messages were imparted was error. We must therefore reject its bare assertion.

### B. Undisclosed Deceptive Devices

L & F next claims that the commercials depended upon undisclosed devices constituting false advertising *per se.* Specifically, L & F asserts that the use of carbon black in the soap scum formula and tile templates in the televised commercials was deceptive.

### 1. Carbon Black

■ L & F specifically objects to the use of carbon black and argues that it was deceptive to add it to the laboratory soap scum because it left the viewer with the false impression that LYSOL products would leave behind a residue capable of soiling white fabric. The district court rejected this contention.

L & F would have us find that there is some acceptable level of "blackness" for laboratory-developed soap scum which was exceeded in this case. Even were we inclined to engage in such an endeavor, the record supports the finding that carbon black exists in many household items and is thus a natural component of organic soap scum. The inescapable fact is that LYSOL products sometimes leave a residue. In our view, P & G was entitled to make the residue camera-registrable in this fashion.

### 2. Tile Templates

■ L & F also urges that the substitution of tile templates in the steambath and shower stall commercials was deceptive. This argument, too, fails. There is nothing inherently misleading about simulating cleaning on-screen, and conducting the actual testing off-camera. It is undisputed that the competing products were treated in the same manner. That the custodians actually wiped

ordinary soil rather than the laboratory developed scum does not strike us as deceptive. We find nothing extraordinary in the techniques employed to demonstrate product superiority. It was, therefore, not clear error for the district court to conclude that the use of templates was not misleading.

### CONCLUSION

We have examined each of L & F's other contentions and find them to be without merit. Accordingly, the judgment of the district court is AFFIRMED.