GARDEN WAY INC., Plaintiff,

v.

THE HOME DEPOT INC., Deere & Company and John Deere Company, Defendants.

No. 00–CV–0357 (LEK/RWS).

United States District Court, N.D. New York.

April 18, 2000.

Maria T. Vullo, Paul, Weiss Law Firm, New York City, for plaintiff.

Richard A. Kurnit, David Y. Atlas, Gerald E. Singleton, Frankfurt, Garbus Law Firm, New York City, for defendants.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Plaintiff seeks an injunction ordering defendant Home Depot to cease dissemination of its nationwide buyer's guide which contains a comparative advertisement from defendant John Deere. For the reasons set forth below, Plaintiff's motion is granted in its entirety.

### I. BACKGROUND

The mowing season is upon us, and litigation and pollen are in the air. Plaintiff Garden Way and defendant John Deere manufacture competing lawn and garden tractors. Defendant Home Depot distributes a buying guide at all of its stores to assist customers. At issue is a John Deere advertisement (the "Ad") in Home Depot's buyer's guide that negatively compared Garden Way's Troy–Bilt tractors to John Deere's Scotts line.

The Ad reports the results of certain tests that John Deere's engineers conducted in May 1999, and makes three assertions that Plaintiff contends are false and/or misleading. First, the Ad included a graph showing that Garden Way's Troy–Bilt tractors had "approximately three times as many failures" as Scotts tractors tested, a conclusion that was repeated in

the Ad's text. Second, the Ad states that while it would take only $175 to repair failed John Deere parts throughout the life of the product, it would cost $750 to make similar repairs on a Troy–Bilt tractor. Third, the Ad asserts that Garden Way's Troy–Bilt tractors would be "down" or in service shops twice as often as John Deere's Scotts tractors.

Garden Way then commenced this action by Order to Show Cause and seeks a preliminary injunction ordering defendant Home Depot, Inc. to cease dissemination of the Ad and to recall all copies already distributed. Home Depot has attempted to resolve this dispute by offering to insert an Addendum in every copy of its buyers guide that would provide additional information regarding the tests. Garden Way rejects that offer as insufficient.

## II. ANALYSIS

■ A party seeking preliminary injunctive relief must show (1) that it will suffer irreparable harm if relief is denied, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor. *See Procter & Gamble Co. v. Chesebrough– Pond's, Inc.,* 747 F.2d 114, 118 (2d Cir.1984); *Coca–Cola Co. v. Tropicana Prods., Inc.,* 690 F.2d 312, 314–15 (2d Cir. 1982); *United States v. Siemens Corp.,* 621 F.2d 499, 505 (2d Cir.1980). In cases involving comparative advertising, the Second Circuit has clearly held that courts will presume irreparable harm where a plaintiff demonstrates .a likelihood of success in showing literally false the defendant's comparative advertisement which mentions plaintiff's product by name. *See McNeilab, Inc. v. American Home Products Corp.,* 848 F.2d 34, 38 (2d Cir.1988).

Section 43(a) of the Federal Trademark Dilution Act (better known as the Lanham Act), 15 U.S.C. § 1125(a) (1988), pursuant to which Plaintiff brings this false advertising claim, provides that

> Any person who, on or in connection with any goods or services ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which—
>
> \*      \*      \*      \*      \*      \*
>
> (2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely ·to be damaged by such act. To succeed under § 43(a), a plaintiff must demonstrate that "an advertisement is either literally false or that the advertisement, though literally true, is likely to mislead and confuse consumers.... Where the advertising claim is shown to be literally false, the court may enjoin the use of the claim 'without reference to the advertisement's impact on the buying public.'" *McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.,* 938 F.2d 1544, 1549 (2d Cir. 1991).

■ A plaintiff's burden in proving literal falsity thus varies depending on the nature of the challenged advertisement. Where the defendant's advertisement claims that its product is superior, a plaintiff· must affirmatively prove defendant's product equal or inferior. Where, as in the case *sub judice,* the defendant's ad explicitly or implicitly represents that tests or studies prove its product superior, plaintiff satisfies its burden by showing that the tests did not establish the proposition for which they were cited. *See McNeil–P.C.C.,* 938 F.2d at 1549. The Court accordingly applies this analysis to each factual statement asserted in the Ad.[1]

---

1. The Court notes that the same unlawful conduct that entitles a plaintiff to injunctive relief under the Lanham Act also justifies injunctive relief under the N.Y.Gen.Bus.Law § 360–1.

## A. Failure Rate

■ The Ad's allegations with respect to the failure rate suffers from two vital problems. First, the language employed is overinclusive, drawing no distinction between mowing and garden tractors, and offering no specificity as to the kinds of tractors that John Deere's engineers tested. According to the supporting affidavits, the test pool consisted of three units of only a single model, yet the Ad broadly claims that Plaintiff's tractors have three times the failure rate. Moreover, there is apparently a genuine issue as to the comparability of the tested model with the one defendant John Deere advertised. According to the Ad, if I walked into a store and purchased a Troy Bilt tractor, I should be buying an item that, across the board, fails three times more than a John Deere. But defendant Home Depot implicitly concedes that this broad assertion does not apply to every Troy Bilt product, as the Ad expressly states. The Ad's assertion as to the failure rate is literally false.

Now, advertising carries with it a certain latitude. Puffery, bragging, and a degree of exaggeration are not unexpected and, generally, courts will not interfere with a company's marketing strategy. For example, "Nothing Runs Like a Deere" is a creative way to express John Deere's belief that its products are superior relative to the rest of the field. But an advertiser treads a far different line when it not only lauds its own products, but directly attacks a competitor. In that situation, the principle of *caveat contendor* applies. Truth in advertising is crucial when one assumes the role of a "judge" of a competing product.

## B. Repair Costs and Times

Plaintiff contends that the repair cost claims made in the Ad omit all warranty data, while defendant Home Depot counters that warranties differ and require subjective determinations as to whether a part requiring repair is covered. But the Ad's omission of such calculation, and the failure to note that omission, strikes the Court as no less subjective and renders the assertion literally false. The Ad states that a consumer will pay on average $750 in repair costs over the life of one of Plaintiff's mowers. If the warranty data could not have been calculated, then this allegation should not have been made. The third assertion concerning repair times falters for much the same reason.

## C. Summary

The Ad rests on a tissue of seemingly random assumptions and contains literally false statements. The proposed modifications contained in the Addendum (which, the Court notes, has yet to be distributed nationwide) cannot remedy the damage that the disseminated copies of the buyer's guide already have had on Plaintiff's trademark. Defendant Home Depot claims that granting the injunctive relief that Plaintiff seeks will harm innocent third parties, specifically the other advertisers in the buyer's guide. That is true, but these advertisers (and, presumably, Home Depot) may pursue their rights against defendant John Deere. Moreover, the Court notes that Plaintiff contacted Defendants on January 21, 2000 while the Ad was still in galley form. They were therefore on notice from that moment as to a potential Lanham Act violation.

We live in society that values quantification. You can read about the 100 "top" colleges in *U.S. News & World Report*, or the ten "best" cars in *Consumer Reports*. But comparative advertising confers on advertisers a serious responsibility to the public and competitors. If Defendants wish to secure the undoubted advantage of numerical comparisons, then they should get them right.

## III. CONCLUSION

Accordingly, it is hereby

ORDERED that Plaintiff's motion for a preliminary injunction is GRANTED and all further publication of the Ad is prohibited and all released copies should be recalled forthwith;

ORDERED that Plaintiff submit a proposed order setting forth a briefing schedule for expedited discovery concerning the Ad's bases no later than May 5, 2000; and it is

FURTHER ORDERED that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.